IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LARRY JOHNSON**, | Case No. 3:19-cv-485-SI |
| Plaintiff | **OPINION AND ORDER** |
| v. | |
| **GUARDIAN MANAGEMENT and UPTOWN TOWERS**, | |
| Defendants | |

Paul W. Conable and Sadie Y. Concepción, TONKON TORP LLP, 888 SW Fifth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Plaintiff.

Christopher J. Drotzmann, DAVIS ROTHWELL EARLE & XÓCHIHUA PC, 200 SW Market Street, Suite 1800, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Larry Johnson filed this lawsuit against Defendants Guardian Management (Guardian Management) and Uptown Tower Apartments, LLC (Uptown Tower)[1] (collectively,

---

[1] Plaintiff represented himself (*pro se*) when he filed the Complaint in this action and did not correctly name Defendant Uptown Tower Apartments, LLC. Plaintiff now is represented by counsel.

PAGE 1 – OPINION AND ORDER

Defendants). Plaintiff asserts a claim under the Fair Housing Act (FHA),[2] 42 U.S.C. § 3604(f), alleging that Defendants discriminated against Plaintiff when Defendants denied what Plaintiff contends was a request for a reasonable accommodation. Plaintiff alleges that he is entitled to a "live-in aide" as an accommodation for his disability. The income of a live-in aide is excluded from the annual income Defendants are required to report to the U.S. Department of Housing and Urban Development (HUD) to calculate a tenant's Section 8 housing subsidy. Plaintiff alleges that Defendants refused Plaintiff's request for a reasonable accommodation that his wife, Rowena Perpiñan Johnson (Mrs. Johnson) be considered as a live-in aide and that her income be excluded from what Plaintiff is required to report, after Mrs. Johnson moved in with Plaintiff for purposes of providing Plaintiff with needed caregiving.

Defendants argue that Mrs. Johnson cannot qualify as a live-in aide because HUD regulations exclude all spouses from being considered as live-in aides. Defendants argue that the Court should defer to the findings and determination of the HUD Office of Fair Housing and Equal Opportunity (FHEO), as provided in the FHEO's Preliminary Letter of Findings of Compliance issued on September 8, 2020 (Letter of Findings),[3] and the Letter of Determination issued on January 13, 2021 (Letter of Determination).[4] In its Letter of Findings, the FHEO stated that Defendants did not discriminate under the FHA because spouses are excluded from the definition of "live-in aide." In the Letter of Determination ion), the FHEO reached the same

---

[2] The Fair Housing Amendments Act of 1988 (FHAA) amended the FHA. The amendment strengthened the Act's provisions to combat housing discrimination and neighborhood segregation. Pub. L. No. 100-430, 102 Stat. 1619 (1988) (amending 42 U.S.C. §§ 3601-3619 (1982)).

[3] ECF 37-1 at 12-17.

[4] ECF 46-1.

PAGE 2 – OPINION AND ORDER

conclusion. Defendants also argue that Mrs. Johnson does not meet the required elements of a live-in aide as stated in 24 C.F.R. § 5.403, even if spouses are not categorically excluded. Defendants assert that Mrs. Johnson does not meet those requirements because she lives with Plaintiff "as his spouse" and is residing with Plaintiff for reasons other than to provide necessary caregiving services to Plaintiff. Before the Court is Defendants' motion for summary judgment. For the reasons below, Defendants' motion is denied.

## STANDARD OF REVIEW

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

### A. The Parties

Defendant Uptown Tower is an apartment complex that participates in the Section 8 project-based housing assistance program through HUD. ECF 12 ¶ 3. Uptown Tower is a

covered dwelling under the FHA. Uptown Tower must comply with HUD regulations as a Section 8 project-based housing program. Letter of Findings at 1. Defendant Guardian Management is the property manager for Uptown Tower. *Id*.

Plaintiff is a low-income senior with significant health needs who lives in Uptown Tower. He moved into Uptown Tower on May 12, 2015, after living for several months in a nursing home, while recovering from back surgery. Letter of Findings at 2. His rent is subsidized by the HUD Section 8 project-based housing program. The parties do not dispute that Plaintiff qualifies for funding for a live-in aide through the Medicaid Independent Choices Program. ECF 26 ¶ 8; ECF 27 ¶ 6; *see also* Or. Admin. R. 411-030-0100.

### B. Plaintiff's Requests for Accommodation

On July 22, 2015, approximately ten weeks after moving into Uptown Tower, Plaintiff completed Guardian Management's Reasonable Accommodation/Modification Request and Verification Form (Accommodation Request).[5] ECF 11-1 at 34. Plaintiff requested an accommodation for a live-in aide[6] because of increased health problems associated with falls, memory issues, seizures, and other concerns resulting from Plaintiff's spinal stenosis disabilities. *Id*. Teyonda Overton, a Certified State of Oregon Caregiver, signed the Accommodation Request form but did not state whether she considered Plaintiff disabled or whether she considered Plaintiff's requested accommodation necessary for Plaintiff to fully enjoy his rental unit. *Id*.

---

[5] To complete Guardian Management's Accommodation Request form, a medical provider must sign the form and verify whether the requestor is a person with a disability, whether the request for a live-in aide is related to the requestor's disability, and whether the accommodation is necessary to afford the requestor equal use and enjoyment of his rental.

[6] The term "live-in aide" is used in the HUD regulations. *See, e.g.*, 24 C.F.R. § 5.403. The term "live-in caregiver" is used in the Letter of Findings and in some of the documentation from HUD. In this context, the terms are interchangeable.

In April 2016, Plaintiff married Mrs. Johnson. ECF 40 ¶ 2. At the time of their marriage, Plaintiff lived in Oregon and Mrs. Johnson lived in the Philippines. *Id.*; ECF 39, ¶ 2. Plaintiff and Mrs. Johnson continued to live apart for the next two years. ECF 39 ¶ 2. During those two years, Mrs. Johnson continued to live and maintain her own home in the Philippines, where she worked as a teacher, with no intention of coming to live in the United States. ECF 39 ¶ 2; ECF 40 ¶ 2.

On August 8, 2016, Plaintiff submitted a follow-up to his accommodation request, stating that he had submitted his request on July 22, 2015 but had received no response; Plaintiff requested an "expedited response so I can plan and prepare." ECF 20 at 9. Defendants did not respond to either request submitted by Plaintiff.

After two years of marriage, Mrs. Johnson offered to move to the United States to take care of Plaintiff because of his declining health issues. *See* ECF 39 ¶ 3; ECF 40 ¶ 3. On September 13, 2018, Plaintiff completed a second Accommodation Request form for a live-in aide based on his disability. *See* Letter of Findings at 3. Shelby Erickson, Certified Medical Assistant, wrote a letter of support for Plaintiff's third Accommodation Request that verified Plaintiff's disability and his disability-related need for a live-in caregiver. *Id.* At about the same time, Plaintiff told Uptown Tower that Mrs. Johnson would be moving in and would be his live-in caregiver. *Id.*; *see also* ECF 36 ¶ 3. Mr. Genaro Lopez, the property manager at Uptown Tower, told Plaintiff that a spouse is considered to be a member of the household, must be added to the lease, and does not qualify as a live-in aide. Letter of Findings at 3; ECF 36 ¶ 4.

Mrs. Johnson took a leave of absence from her job in the Philippines. ECF 20 at 16. She moved in with Plaintiff on November 5, 2018. She was certified as Plaintiff's live-in aide under the Medicaid Independent Choice Program on that same day. *Id.* The Medicaid Independent

Choice Program pays Mrs. Johnson for the services she provides to Plaintiff as his live-in aide. *Id*.

On November 13, 2018, Plaintiff submitted to Guardian Management a Change Report, notifying Guardian Management that Mrs. Johnson had moved in as his caregiver because of his health needs. Letter of Findings at 3. In support, Plaintiff submitted a Verification for a Reasonable Accommodation/Modification by Qualified Individual form (Verification Form). ECF 11-1 at 39. Health Care Provider Abdul Ali Wright signed this form, verifying that Plaintiff was disabled and that his need for a live-in aide was related to his disability and necessary for him to have equal enjoyment of his rental unit. *Id*.

On February 4, 2019, Plaintiff submitted a Change Report form, requesting a "difficulty of care" exemption for spouse and family member. Letter of Findings at 3. In support, he submitted a Verification Form signed by Judith Becher, from the Multnomah County Health Department NE Health Clinic, which conveyed that Plaintiff is disabled and in need of the services of a live-in aide to have the same opportunity as a nondisabled individual to use and enjoy his rental unit. *Id*. Although a copy of this request is not in the record, it appears that Plaintiff was requesting, in the alternative, that if Defendants were not going to accept Mrs. Johnson as a traditional live-in aide, they should still not count or consider her income for purposes of Plaintiff's qualifications under Section 8.

On February 13, 2019, Plaintiff submitted a handwritten third request for an accommodation for Defendants to consider Mrs. Johnson as Plaintiff's live-in aide. ECF 11-1 at 14. About this same time, Mr. Lopez asked Kory Thompson, the HUD Lead Compliance Specialist for Guardian Management, if a spouse could be considered as a live-in aide. Letter of Findings at 3. Mr. Thompson told Mr. Lopez that a live-in aide needs to be a person who does

not live in the unit for any other reason and whose finances are not tied together as a family unit. *Id.* Defendants then informed Plaintiff that a spouse cannot be added to the lease as a live-in aide and that HUD regulations required Defendants to consider Mrs. Johnson as a household member whose income and assets must be included when Defendants reported Plaintiff's household income to HUD in calculating Plaintiff's Section 8 housing subsidy. *See* Letter of Findings at 3; ECF 36 ¶ 4. When Mr. Lopez asked Plaintiff and Mrs. Johnson to fill out paperwork to add her name to Plaintiff's lease and complete the recertification process for Section 8 housing, Plaintiff became upset and responded that Mrs. Johnson could not be added because of the Independent Choices Program. ECF 36 ¶ 6.

**C. HUD Determination**

Plaintiff filed this lawsuit in April 2019. In September 2019, Plaintiff filed a complaint with the HUD FHEO. In his HUD complaint, Plaintiff alleged, among other things, that Defendants violated the FHA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, when Defendants refused Plaintiff's reasonable accommodation request for Mrs. Johnson to be Plaintiff's live-in aide. *See* Letter of Findings at 1.

The FHEO issued the Letter of Findings on September 8, 2020. The Letter of Findings addressed, among other things, Plaintiff's complaint that Defendants discriminated against Plaintiff by refusing the requested accommodation that Mrs. Johnson should be considered a live-in aide whose income does not count for purposes of Section 8. The Letter of Findings states that although Plaintiff proved the five elements of discrimination under the FHA, Plaintiff's request was not a reasonable accommodation. Letter of Findings at 4. The FHEO concluded that Plaintiff's request was not a reasonable accommodation because it created an undue financial and administrative burden on Defendants and because it requested "a fundamental alteration to

[Defendants'] operation as a housing provider of HUD assisted housing." *Id.* at 4-5. The FHEO explained that "[w]hile a relative may be considered a live-in caregiver," HUD's "applicable rules and regulations" do not allow a spouse to be a live-in aide. *Id.* at 5. The Letter of Findings quotes HUD Handbook 4350.3 Rev. 1 (HUD Handbook),[7] which mirrors the regulations in setting out the three requirements for a live-in aide. *Id.* It does not mention spouses. *Id.* Because the FHEO concluded that Mrs. Johnson could not qualify as a live-in aide, the FHEO determined that Defendants did not unlawfully deny a reasonable accommodation request from Plaintiff on this issue.

After Plaintiff received FHEO's Letter of Findings, Plaintiff submitted a request for review of the finding to the Regional Director of the FHEO. Susan H. Crawford, Director of Compliance and Disability Rights for the FHEO, reviewed the decision and confirmed the Letter of Findings. *See* Letter of Determination. The review cited the Office of Public and Indian Housing Notice PIH 2014-25 (HA) as the authority for the determination that a spouse may not be a live-in aide. Determination Letter at 2 (citing Off. of Pub. & Indian Hous. Not. PIH 2014-25 (HA), OVER SUBSIDIZATION IN HOUSING CHOICE VOUCHER PROGRAM (2014) *available at* https://www.hud.gov/program_offices/public_indian_housing/publications/notices/2014 (PIH Notice)). The Letter of Determination states that the PIH Notice "provides clarification on the definition of live-in aides found at 24 CFR § 5.403. The PIH Notice applies to all properties in the [Housing Choice Voucher] (HCV) program, including Uptown Tower Apartments. According to the [PIH] Notice, 'in accordance with this definition, a live-in aide is not a member

---

[7] The HUD Handbook is available at https://www.hud.gov/program_offices/administration/hudclips/handbooks/hsgh/4350.3.

of the assisted family and is not entitled to the HCV as the remaining member of the tenant family.'" *Id.*

## DISCUSSION

Plaintiff alleges that Defendants refused to make a reasonable accommodation, in violation of 42 U.S.C. § 3604(f), by denying Plaintiff's request for Mrs. Johnson to be Plaintiff's live-in aide. Defendants move for summary judgment, arguing that Plaintiff's requested accommodation was unreasonable because it was not legally permissible under HUD regulations.[8] Defendants assert that Mrs. Johnson does not qualify as a live-in aide and that the Court should defer to the FHEO's determination on this point as expressed in the Letter of Findings and Letter of Determination. Defendants contend that this issue is dispositive of the reasonableness of Plaintiff's requested accommodation. Alternatively, they argue that the request was unreasonable because she does not meet the requirements of the regulation even if spouses are not categorically excluded.

Plaintiff responds that the HUD regulations do not categorically exclude a spouse from being considered a live-in aide and that the Court should not defer to the FHEO's determination that Mrs. Johnson cannot qualify as a live-in aide as stated in the Letter of Findings and Letter of Determination. Plaintiff also argues that Mrs. Johnson meets the definition in the governing

---

[8] Defendants do not argue that, separate from the HUD regulation purportedly precluding Mrs. Johnson from serving as a live-in aide, her doing so would impose on Defendants an undue financial or administrative burden. Indeed, in Defendants' opening brief they do not raise any argument relating to undue burden, and in their reply they simply state, "To require Defendants to exclude Mrs. Johnson's income despite a HUD ruling to the contrary would be to expose Defendants to unreasonable administrative burdens." ECF 41 at 6. Thus, the Court does not consider whether having Mrs. Johnson as a live-in aide imposes an undue financial or administrative burden on Defendants.

regulations of a live-in aide and Defendants' denial of Plaintiff's request that Mrs. Johnson be considered his live-in aide violates the requirements of 42 U.S.C. § 3604(f).

### A. Standards under the Fair Housing Act

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of service or facilities in connection with such dwelling because of a handicap." 42 U.S.C. § 3604(f)(2) (as amended by Pub. L. No 100-430, 102 Stat. 1619 (1988)). Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to enjoy the dwelling." 42 U.S.C. § 3604 (f)(3)(B). The FHA states that the refusal of a reasonable disability accommodation is a form of discrimination.

To establish a *prima facie* case of a refusal to make a reasonable accommodation, a plaintiff must show that: (1) he or she suffers from a "handicap" as defined by 42 U.S.C. § 3602(h); (2) the defendants knew or should reasonably be expected to know of the plaintiff's handicap; (3) the accommodation of the handicap "may be necessary" to afford the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendants refused to make such accommodation. *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997).

### B. Section 8 housing requirements

Because the conduct at issue originated from adherence to the Section 8 housing requirements and HUD regulation, the Court provides a brief explanation of the Section 8 housing program. In 1974, Congress added the Section 8 housing program to the United States Housing Act of 1937 "[f]or the purpose of aiding low-income families in obtaining a decent

place to live." 42 U.S.C. § 1473f. Section 8 gives eligible families either "tenant-based" or "project-based" rent subsidies administered through state or local project housing authorities (PHAs) using funds provided by HUD. *Park v. Vill. Apartment Tenants Ass'n v. Mortimer Tr.*, 636 F.3d 1150, 1152-1153 (9th Cir. 2011); 24 C.F.R. §§ 983.5(a)-(b), 982.4(b). Project-based Section 8 housing helps families who live in specific housing developments or units. 42 U.S.C. § 1437f(f)(6). Under Section 8's project-based program, a PHA contracts with a property owner (the HAP contract) and makes rent subsidy payments, called housing assistance payments (HAPs), for specific housing developments or units and for specified terms. 24 C.F.R. §§ 983.5(a)(1)-(3), 983.3(b). During the term of the HAP Contract, the PHA makes HAPs to the owner for the units leased and occupied by approved families. *Id.* §§ 983.5(a) (4), 983.202.

In the Section 8 program, low-income participants pay 30 percent of their adjusted income for rent, and the housing authority pays the remainder. *Id.* § 5.628(a). HUD calculates a tenant's adjusted income using HUD income counting rules, which include the live-in aide exemption. *Id.* § 5.609(c)(5). Annual income is defined broadly as "all amounts, monetary or not." *Id.* § 5.609(a). Income includes "compensation for personal services" that "[g]o[es] to, or on behalf of, the family head or spouse (even if temporarily absent) or to any other family member." *Id.*, §§ 5.609(a)(1); 5.609(b)(a). Income does not include such amounts specifically excluded under the regulation. *Id.* § 5.609(a)(3). The regulations exclude sixteen categories of income from qualifying as annual income. The exclusion that Plaintiff argues applies is the exclusion for a live-in aide as defined in 24 C.F.R. § 5.403. *Id.* § 5.609(c)(5). Housing providers who participate in a Section 8 project-based assistance program must reexamine and redetermine family income and composition annually. *Id.* § 5.657.

**C. Deference to the FHEO**

Defendants argue that the Court should defer to the FHEO's determination that Mrs. Johnson does not qualify as a live-in aide and thus Plaintiff's requested accommodation was unreasonable. The FHEO was interpreting its own regulations. When an agency is interpreting its own regulations, courts have traditionally accepted the agency's reading unless it is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452 (1997);[9] *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945); *see also Harkonen v. U.S. Dep't of Justice*, 800 F.3d 1143, 1150 (9th Cir. 2015) ("An agency's interpretation of its own regulation is entitled to judicial deference unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'" (quoting *Auer*, 519 U.S. at 461)).[10]

The FHEO investigated Plaintiff's claim that Defendants violated the FHA, the Rehabilitation Act, and the ADA when Defendants refused Plaintiff's accommodation request to consider Mrs. Johnson as Plaintiff's live-in aide. In the Letter of Findings, the FHEO stated that Plaintiff's requested accommodation was an undue financial and administrative burden, with no explanation or analysis.

The Letter of Findings also quotes the HUD Handbook, which sets forth three requirements for a live-in aide that mirror the requirements in 24 C.F.R. § 5.403. These

---

[9] The parties disagree over whether deference is appropriate under *Skidmore v. Swift*, 323 U.S. 134 (1944). *Skidmore*, however, applies when an agency is interpreting a statute, and here the agency was interpreting its own regulations, which is governed by *Auer*. If the Court were to consider deference under *Skidmore*, the Court would not defer here, because the agency's interpretation is not persuasive considering its thoroughness, the validity of its reasoning, and its consistency with its other pronouncements. *See id.* at 140.

[10] *But see Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 615 (2013) (Roberts, C.J. concurring) ("It may be appropriate to reconsider that principle [of *Auer* deference] in an appropriate case. But this is not that case.").

requirements are that the caregiver "(1) Is determined to be essential to the care and well-being of the persons; (2) Is not obligated for the support of the persons; and (3) Would not be living in the unit except to provide the necessary supportive services." 24 C.F.R. § 5.403. The Letter of Findings concludes, without explanation or authority, that "while a relative may be considered a live-in caregiver, HUD Multi Family Housing (MFH) who oversees properties funded through the Housing Assistance Program, does not allow a spouse to be considered a live-in caregiver (for purposes of calculating rent) per the applicable rules and regulations." Letter of Findings at 5.

In affirming the conclusion of the Letter of Findings, the Letter of Determination cites the PIH Notice. The PIH Notice is addressing the problem of over-subsidization. One "red flag" issue is when payments are made for more bedrooms than the number of family members. The PIH Notice explains that this most often occurs when there is a live-in aide. After setting out the definition of a "live-in aide," with its three requirements, the PIH Notice states that in accordance with that definition, "a live-in aide is not a member of the assisted family and is not entitled to the HCV as the remining member of the tenant family." *See* PIH Notice, at 3. Relying on the PIH Notice, the Letter of Determination concludes that Defendants denied Plaintiff's request for a live-in aide based on HUD rules and not based on Plaintiff's disability. Thus, there is no discrimination based on disability.

The HUD regulation defining live-in aides, however, does not exclude a spouse or family member from acting as a live-in aide. Indeed, when the definition was established, the agency intentionally *deleted* proposed text that would have precluded spouses and family members from serving as live-in aides specifically to encourage such persons to serve as live-in aides. *See Section 8 Certificate and Voucher Programs Conforming Rule: Admissions*, 59 Fed. Reg. 36662,

36665 (July 18, 1994) ("The final rule deletes a proposed change of the live-in aide definition (not included in the parallel language of other Section 8 rules) to provide that a live-in aide may not be related by blood, marriage or operation of law to the persons receiving Section 8 assistance for occupancy of the unit. Comments objected to this proposal, stating that HUD should encourage a family relative to act as a live-in aide.").

Further, the PIH Notice does not discuss whether a spouse can qualify to serve as a live-in aide—it does not mention spouses at all. The PIH Notice is not clearly drafted, but it appears to mention live-in aides not being a member of the assisted family in the context of explaining over-subsidization and the number of bedrooms as compared to family members, and in the technical sense for "remaining family member" status after the tenant passes. *See* PIH Notice at 3 ("In accordance with this definition, a live-in aide is not a member of the assisted family and is not entitled to the HCV as the remaining member of the tenant family."). In other words, the notice explains that a live-in aide is not technically a family member and thus is not entitled to remain in the property after the tenant passes.

Further, this issue has been discussed by courts, when adult children have served as live-in aides and argued that they have a right to remain in the Section 8 housing. In those circumstances, courts have explained that live-in aides, even when family members, are not entitled to remain in the property after the tenant passes. *See, e.g.*, *Daniels v. Dep't of Hous. & Urb. Dev.*, 2017 WL 3161207, at *5 (E.D. Ark. July 25, 2017), *aff'd*, 730 F. App'x 399 (8th Cir. 2018); *Washington v. Los Angeles Second Baptist Homes, Inc.*, 2014 WL 2197757, at *6 (C.D. Cal. May 24, 2014). Thus, if the PIH Notice intended to state that no family member can ever be a live-in aide, it is inconsistent with the regulatory definition set forth in 24 C.F.R. § 5.403.

The FHEO's interpretation of the PIH Notice and HUD's other rules and regulations as categorically requiring that spouses may not serve as live-in aides is plainly erroneous and inconsistent with the regulation. Indeed, the cited text from the PIH Notice would mean that all family members could not serve as live-in aides, and the FHEO cited that text for the proposition that family members except spouses could serve as live-in aides. Thus, the FHEO's own analysis was internally inconsistent. It also conflicts with the written guidance provided by HUD in the HUD Handbook. The HUD Handbook specifically states that a relative may be a live-in aide if they meet the requirements of 24 C.F.R. § 5.403.[11] HUD Handbook 4350.3 Rev. 1, at 3-10.

Defendants argue that the *Live-In Aides and Housing Choice Voucher Program Fact Sheet* specifically notes examples of an adult child or a nephew moving into an apartment and acting as a live-in aide but includes no examples of a spouse acting as a live-in aide. *See* Lisa Sloan, *Live-in Aides and the Hous. Choices Voucher Prog. Fact Sheet*, 6 (2003). Of course, sisters and cousins are not included in the Fact Sheet examples, but Defendants could not plausibly argue that they could not serve as live-in aides when nephews and adult children can. *See, e.g.*, *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 976 (D.C. Cir. 2016) (noting that a sister served as a live-in aide). Regardless of the specific examples given in the Handbook or the Fact Sheet, the text of the regulatory definition does not exclude spouses (or adult children, nephews, nieces, cousins, sisters, and so forth). Further, if the PIH Notice intended to exclude persons, as

---

[11] The issue of whether a live-in aide would otherwise be living in the apartment is one that HUD faces often. "The issue of relatives or family members as live-in aides is one of the most complicated for PHAs to address. Although relatives are not automatically excluded as eligible live-in aides, they must meet the definition stated earlier. It is fairly clear that a pre-existing household member does not qualify as a live-in aide. It is more complicated when a child moves into a unit to assist an ailing parent or vice versa or when a live-in aide becomes a boyfriend of girlfriend after moving into the unit." Lisa Sloan, *Live-in Aides and the Hous. Choices Voucher Prog. Fact Sheet*, 5-6 (2003).

FHEO contends, then it would also exclude a nephew or adult child acting as a live-in aide because an adult child and nephew would be "a member of the assisted family." FHEO's interpretation of the PIH Notice cannot plausibly be that the PIH Notice excludes spouses (which it does not mention) but does not exclude other family members (which it expressly mentions). Thus, the FHEO's interpretation is clearly erroneous and conflicts with the governing regulations.

The FHEO's interpretation that spouses cannot qualify as a live-in aide is plainly erroneous.[12] It also conflicts with the regulatory definition of live-in aide codified in 24 C.F.R. § 5.403, the HUD guidance in the HUD Handbook, case law discussing family members serving as live-in aides, and the legislative history of the definition of a live-in aide. Thus, the Court does not give the FHEO's interpretation deference.

### D.  Whether Plaintiff's Request was Unreasonable

It is undisputed that Plaintiff has a disability, that Defendants knew about that disability, and Defendants denied the request for the accommodation. It is similarly undisputed that Defendants must comply with the FHA. The only issue for the Court to resolve is whether there is a genuine dispute of material fact regarding whether Plaintiff's requested accommodation was unreasonable. Defendants argue that because Mrs. Johnson does not qualify as a live-in aide, Plaintiff's request was unreasonable.

---

[12] Kory Thompson, HUD Lead Compliance Specialist for Defendant Guardian Management, appears to agree with the Court. He stated in his declaration, "A spouse is *almost always* excluded from the definition of 'live-in aide' because a spouse lives in the unit for reasons other than to provide supportive services." ECF 35 ¶ 8 (emphasis added). Thus, Mr. Thompson appears to recognize that there *may be* circumstances in which a spouse lives in the unit to provide supportive services and thus could meet the definition of a live-in aide.

Plaintiff bears the burden of showing that a requested accommodation "seems reasonable on its face." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1156 (9th Cir. 2003). If Plaintiff meets this initial burden, Defendants may rebut the presumption of reasonableness and necessity by showing that "the accommodation would cause undue hardship in the particular circumstances." *Kuhn v. McNary Estates Homeowners Ass'n., Inc.*, 228 F. Supp. 3d 1142, 1147 (D. Or. 2017). Defendants are only obligated to provide an accommodation if it is both necessary and reasonable. *Giebeler*, 343 F.3d at 1148. "[A]n accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Id*, at 1157 (quotation marks omitted).

Under the FHA, "[t]he reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994). The Act "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." *Id.* This duty applies "not only with regard to the physical accommodations, but also with regard to the administrative policies governing rentals." *Giebeler*, 343 F.3d at 1146-47 (citation omitted).

Defendants argue that Plaintiff's accommodation request is unreasonable because Mrs. Johnson cannot meet the definition of a live-in aide. As noted, a "live-in aide" is defined as

> a person who resides with one or more elderly persons, or near-elderly persons, or persons with disabilities, and who: (1) Is determined to be essential to the care and well-being of the persons; (2) Is not obligated for the support of the persons; and (3) Would not be living in the unit except to provide the necessary supportive services.

24 C.F.R. § 5.403.

The Court rejects Defendants' argument that spouses categorically are excluded from serving as live-in aides, for the reasons the Court declined to defer to the FHEO. Thus, to qualify

PAGE 17 – OPINION AND ORDER

as a live-in aide, Mrs. Johnson must meet the three elements in 24 C.F.R. § 5.403. The parties do not dispute the first two elements. The only dispute concerns the third element, that Mrs. Johnson would not be living with Plaintiff except to provide the necessary supportive services. Defendants argue that because Plaintiff alleges that in 2016, he intended to move to the Philippines to live with his wife, then Plaintiff and Mrs. Johnson must be living together for reasons other than simply allowing Mrs. Johnson to provide supportive services. Defendants also argue that Plaintiff has produced no evidence showing that Mrs. Johnson moved in with Plaintiff solely to provide supportive services to Plaintiff, and that such a claim is "contrary to the idea of marriage."

Plaintiff's declaration, however, states that Mrs. Johnson would not have moved in with Plaintiff and would not continue to reside with Plaintiff were it not for his serious health issues that require the services of a live-in aide. Mrs. Johnson's declaration states that the reason she moved in with Plaintiff was to provide caregiving services and that she would not have moved in with him if he did not need caregiving services. She unequivocally states: "The *only* reason I am living in his apartment is to provide him with these supportive services." ECF 39 ¶ 3 (emphasis added). That Mrs. Johnson did not move to the United States for two years after marrying Plaintiff, until his health deteriorated further, is further evidence supporting Plaintiff's contention that Mrs. Johnson resides with Plaintiff solely for the purposes of providing Plaintiff with caregiving.

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, as the Court must do at this stage of the litigation, the Court finds there is sufficient evidence in the record to survive Defendants' motion for summary judgment. Plaintiff's and Mrs. Johnson's declarations, along with the two-year gap between the time their

PAGE 18 – OPINION AND ORDER

marriage occurred and when Mrs. Johnson moved to Oregon are sufficient evidence to support Plaintiff's contention that Mrs. Johnson lives in Plaintiff's unit exclusively to provide Plaintiff with supportive services. Additionally, Plaintiff's request for a live-in aide started in 2015 (before his marriage) and continued until just before Mrs. Johnson's arrival in Oregon, as well as after she arrived. Plaintiff's genuine need for a live-in aide is well documented in the record, and Mrs. Johnson's arrival and Plaintiff's request for Mrs. Johnson to act as his live-in aide before her arrival in Oregon are further support that Mrs. Johnson would not be living in the unit except to provide necessary Plaintiff with needed supportive services.

Defendants argue that they cannot approve Mrs. Johnson as a live-in aide because she is in the United States on a marriage visa. Defendants specifically point to information provided by Plaintiff in his Affidavit of Support for Mrs. Johnson's application for a marriage visa as evidence that Plaintiff and Mrs. Johnson intended to cohabitate. Defendants argue that Plaintiff's statement that he wanted "to have [Mrs. Johnson] approved for a marriage visa to travel between our countries" is evidence that Plaintiff and Mrs. Johnson would spend time together beyond his need for a live-in aide.

Before his medical issues, Plaintiff intended to move to the Philippines to live with Mrs. Johnson. The question at issue in determining whether a relative qualifies as a live-in aide is whether that person would not be living in the unit except to provide supportive services. Whether Plaintiff wanted Mrs. Johnson to have a marriage visa and the ability to travel between countries does not resolve whether Mrs. Johnson is living in the unit for reasons other than to provide Plaintiff with needed supportive services. The Court does not make credibility determinations at the summary judgment stage. Defendants may argue to the jury the implications of the marriage visa or the fact that Plaintiff previously intended to live in the

Philippines. At this stage, however, Plaintiff has provided sufficient evidence to show a genuine dispute of material fact about whether Mrs. Johnson is living with Plaintiff solely to provide necessary supportive services.

## CONCLUSION

The Court DENIES Defendants' Renewed Motion for Summary Judgment (ECF 34).

**IT IS SO ORDERED**.

DATED this 26th day of April, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge